UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN T. MARTINEZ,

                         Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                         Defendant.

Case. No. 19-12007

District Judge Thomas Ludington
Magistrate Judge R. Steven Whalen

_____ /

## REPORT AND RECOMMENDATION

Plaintiff John T. Martinez  brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #13] be DENIED and that Defendant's Motion for Summary Judgment [Dock. #19] be GRANTED.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on September 11, 2014 alleging disability as of August 30, 2014 Tr. 253, 255).  Upon initial denial of the claim, Plaintiff requested an

administrative hearing, held on February 15, 2017 in Flint, Michigan before Administrative Law Judge ("ALJ") Andrew G. Sloss (Tr. 120).  On April 13, 2017, ALJ Sloss found that Plaintiff was not disabled (Tr. 133).

On January 13, 2018, the Appeals Council vacated ALJ Sloss' decision, ordering the ALJ to address Plaintiff's use of a walking cane and visual impairment in determining whether Plaintiff was capable of a significant range of work  (Tr. 141-142).  The Appeals Council also ordered the ALJ to discuss the weight accorded to both Plaintiff's treating and non-treating medical sources (Tr. 142).  ALJ Sloss held a second hearing on May 24, 2018 (Tr. 50).  Plaintiff, represented by attorney Clifford Walkon, testified (Tr. 53-61), as did Vocational Expert ("VE") Pauline McEachin (Tr. 62-65).  On June 28, 2018, ALJ Sloss again found that Plaintiff was not disabled (Tr. 11-21).   On May 24, 2019, the Appeals Council declined to review the administrative decision (Tr. 1-4).  Plaintiff filed suit in this Court on July 8, 2019.

## II.  BACKGROUND FACTS

Plaintiff, born February 23, 1970, was 48 on the date of the more recent administrative determination (Tr. 21, 253).  He completed 12th grade and worked previously as a direct care worker and job coach (Tr. 290).  His application for benefits alleges disability as a result of vision problems, short-term memory limitations, stroke, body weakness, dizziness, and difficulty walking (Tr. 289).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He received Medicaid (Tr. 53). He required the use of a cane while walking (Tr. 53). He experienced right eye blindness and vision limitations of the left eye since experiencing a stroke in August, 2014 (Tr. 54). He sought emergency treatment for hypertension in the past year (Tr. 54). He experienced the condition of anxiety and took Ativan but had never been treated (Tr. 55, 57). He was unable to grocery shop due to anxiety (Tr. 57). He had not sought mental health treatment due to feeling overwhelmed by the need to see multiple doctors already for his physical conditions (Tr. 58). On a typical day, Plaintiff spent half his time in bed and the other half sitting in a chair (Tr. 55). He did not shop, visit friends, or perform household or yard chores (Tr. 55).

In response to questioning by his attorney, Plaintiff testified that he used a cane for standing as well as walking to avoid losing his balance (Tr. 56). His vision problems included lack of depth perception and peripheral vision and light sensitivity (Tr. 56-57). He also experienced "reading comprehension" problems (Tr. 56). He had experienced anxiety for 10 years at the time of the hearing. He also experienced bilateral Carpal Tunnel Syndrome ("CTS"), which caused gripping problems (Tr. 58). He received steroid injections for CTS two years before the hearing (Tr. 59). Plaintiff stood 5'11" and weighed around 320 pounds (Tr. 59). He experienced poor short-term memory since the stroke (Tr. 59). Due to vision problems, he experienced difficulty writing (Tr. 60). Medication side effects included

bloating, fatigue, and dizziness (Tr. 60).

As a result of the stroke, Plaintiff's ejection fraction was 33 percent (Tr. 60).  He was unable to stand for more than 10 minutes, walk for more than five minutes, or lift more than 10 pounds  (Tr. 61).

### B.  The Medical Records

#### 1.  Records Related to Plaintiff's Treatment

 In August, 2014, Plaintiff was admitted for five-day inpatient treatment for a stroke (Tr. 379-411).  At the time of admission, he reported right-sided vision loss (Tr. 386, 390).  He exhibited a right facial droop (Tr. 387).  He reported that he was currently unemployed (Tr. 386).   A CT of the head performed at the time of admittance showed a large subacute ischemic infarct of the left lower occipital lobe (Tr. 381).  An echocardiogram showed an ejection fraction of "30-35" (Tr. 438).   An EEG showed "slow activity over the left hemisphere" (Tr. 440).  Plaintiff reported that his right-sided vision was "slowly improving" (Tr. 44).  At CT of the chest showed heart enlargement (Tr. 382).  Physical and occupational therapy assessments note "independence" in functional ability and that inpatient "rehab" was not required (Tr. 400).  A CT performed prior to discharge showed "evolving left occipital infarct with mild mass effect but no active hemorrhaging  (Tr. 380).  Plaintiff was diagnosed with diabetes mellitus and a systolic heart function disorder during the hospital stay (Tr. 384).

September, 2014 followup records by cardiologist Thomas Vanhecke, M.D. noted the conditions of a recent cardiovascular event ("CVA"), diabetes, morbid obesity, and

agoraphobia with severe anxiety (Tr. 450).  Later the same month, neurologist Mouaz Sbei,

M.D. noted Plaintiff's report of lightheadedness and visual disturbances (Tr. 452).  He noted

that an EEG performed on October 24, 2014 was normal (Tr. 461).  A visual pattern study

was also normal (Tr. 462).

Dr. Sbei's February, 2015 examination records note no lateralizing motor defects,

clear speech, a normal gait, and only mild right visual field problems (Tr. 475).  Nerve

conduction studies were positive for mild left-side CTS (Tr. 476).

In April, 2015, Patrick Chang, M.D., (acknowledging that Plaintiff was a "new

patient") completed an assessment of Plaintiff's work-related abilities, finding that as a result

of Xanax use, dizziness, vision problems, weakness, and poor balance, Plaintiff was unable

to perform any lifting (Tr. 485, 489).  Dr. Chang found that Plaintiff was unable to sit for

more than two hours a day or stand for more than three  and was required to elevate his legs

to a level above the knee for up to six hours a day (Tr. 486).  He found that Plaintiff would

require unscheduled breaks for up to four hours and was limited to two hours of manipulative

activity each workday (Tr. 486).  Dr. Chang found that Plaintiff was limited to at most "rare"

postural activity and was limited to turning his head occasionally (Tr. 487).  Dr. Chang's

examination records from one day earlier (listed as a "meet and greet") note the active

problems of elevated glucose and hypertension (Tr. 524).  Plaintiff reported the loss of

peripheral vision of the right eye (Tr. 525).  He denied depression or anxiety (Tr. 525).  An

eye exam was unremarkable (Tr. 525).  Plaintiff exhibited a normal gait and posture (Tr.

526).  Cardiological examination records from the next month note Plaintiff's report that he was feeling "good" (Tr. 528).  Under "review of systems," Plaintiff was noted to be "feeling poorly and feeling tired" (Tr. 528).  Dr. Chang's notes from the same month note moderate bilateral lower extremity edema (Tr. 521).

Cardiology records from the following month note Plaintiff's report that he was feeling good and exercised by walking for 10 minutes at a time (Tr. 493).  Plaintiff reported that he took "two or three" Xanax to be able to keep the appointment (Tr. 493).  He exhibited a normal gait and muscle tone with a normal affect and mood (Tr. 496).  June, 2016 records note no diabetic retinopathy of either eye or other vision problems  (Tr. 534).  In September, 2015, Plaintiff denied vision problems, dizziness, or weakness (Tr. 519-520).  Dr. Chang's records from February, 2016 note the absence of psychological symptoms with the use of medication (Tr. 515).  Dr. Sbei's records from the following month note Plaintiff's report of hand paresthesia (Tr. 560).  Dr. Sbei noted that Plaintiff's ability to stand up and walk was compromised by obesity (Tr. 560).  Plaintiff exhibited a positive Tinel's sign of the wrist (Tr. 560).  Dr. Sbei performed bilateral wrist trigger point injections for "mild" CTS (Tr. 560).  Dr. Chang's records from April, 2016 note a normal energy level and no physical symptoms (Tr. 513).  July and August, 2016 records note that Plaintiff was asymptomatic (Tr. 508, 510).

In January, 2017, Dr. Chang noted that Plaintiff's psychological condition was stable (Tr. 568).  Dr. Chang's May, August, and December, 2017 records note that Plaintiff was

asymptomatic (Tr. 562, 565, 588).  A September, 2017 chest x-ray was normal (Tr. 578).

## 2.  Non-Treating Sources

In February, 2015, Samiullah Sayyid, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report that he exercised by walking (Tr. 466).  Dr. Sayyid noted no paresthesia of the hands or feet (Tr. 466).  Plaintiff showed 20/30 vision bilaterally, a normal of range of motion in all extremities, a normal gait (with a cane) and normal grip strength (Tr. 467).  Plaintiff experienced difficulty squatting and recovering due to obesity (Tr. 467).  He reported "black spots" and poor vision bilaterally (Tr. 467).

The same month, Carrie Gleason, Psy.D. performed a consultative psychological evaluation on behalf of the SSA, noting that while Plaintiff brought a cane to the appointment, he did not use it and walked with an only "mildly impaired" gait (Tr. 478). Plaintiff appeared socially appropriate and reported that he enjoyed writing music (Tr. 479). He reported anxiety preventing him from shopping starting in 2009 and that he self-medicated with alcohol to overcome anxiety (Tr. 479).  He denied problems scheduling and keeping appointments (Tr. 480).  He exhibited a normal affect and normal energy level but decreased immediate memory (Tr. 480).  Dr. Gleason concluded that Plaintiff's abilities to "understand, attend to, remember, and carry out instructions" was moderately impaired but ability to respond to stress and interaction with coworkers and supervisors was only mildly impaired (Tr. 482).

In March, 2015, Jerry Csokasy, Ph.D. performed a non-examining assessment of

Plaintiff's psychological condition, finding mild limitation in activities of daily living and

moderate limitation in social functioning and concentration, persistence, or pace (Tr. 94).

### C.  Vocational Testimony

VE MacEachin classified Plaintiff's past relevant work as a job coach as exertionally

light and semiskilled[1]  (Tr. 52).  The ALJ then described a hypothetical individual of

Plaintiff's age, education, and work experience with the following limitations:

> [L]imited to light work, except he can occasionally climb ramps or stairs, and
> can occasionally balance.  He must avoid concentrated exposure to vibration
> and to hazards, and is limited to simple routine tasks in work that has only
> occasional interaction with the general public; could he perform his past job?
> (Tr. 62).

The VE responded that the individual would be unable to perform Plaintiff's past

relevant work but could perform the work of a general office clerk (250,000 positions in the

national economy); bench assembler (125,000); or inspector (180,000) (Tr. 63).  The VE

testified that the need for a cane would eliminate all of the above jobs (Tr. 63).

The ALJ posed a second set of limitations consisting of sedentary work, the use of a

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires
"lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of
objects weighing 50 pounds or more. § 404.1567(e).

cane, occasional climbing of ramps/stairs and occasionally balance with avoidance of concentrated exposure to vibration and hazards (Tr. 63). He also limited the individual to "simple routine tasks and work that has only occasional changes in the work setting" with only "occasional interaction with the general public" (Tr. 63). The VE responded that the second hypothetical individual could perform the sedentary, unskilled work of a general office clerk (150,000); inspector (130,000); and bench assembler (Tr. 150,000). The VE testified that the need to miss more than one day of work each month would preclude all work (Tr. 64). She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") except for the testimony pertaining to the use of a cane and absenteeism, which was based on her own profession experience (Tr. 64).

In response to questioning by Plaintiff's counsel, the VE stated that a limitation to occasional handling and fingering (in conjunction with the second set of limitations posed by the ALJ) would eliminate all of above-stated sedentary jobs (Tr. 65).

**D.  The ALJ's Decision (June 28, 2018)**

Citing the medical records, ALJ Sloss found that Plaintiff experienced the severe impairments of "cardiomyopathy; left-sided hemiparesis; obesity; unspecified neurocognitive disorder; [and] unspecified anxiety disorder" but that none of the conditions met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14). The ALJ found that Plaintiff had moderate limitation in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining

pace with only mild limitation in adapting or managing oneself (Tr. 14).

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> He can occasionally climb ramps or stairs, and can occasionally balance.  He must avoid concentrated exposure to vibration and to hazards.  He can perform simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public (Tr. 15)

The ALJ discounted Plaintiff's alleged degree of limitation, finding that it was "difficult to give credence to [the] subjective complaints" (Tr. 18).  The ALJ cited August, 2014 tests showing 20/30 vision of the left eye (Tr.18).  He noted that Plaintiff had not sought mental health treatment despite insurance coverage for such services (Tr. 18).  He cited Plaintiff's statement to his cardiologist that he had "no complaints" (Tr. 18).  The ALJ found that the medical transcript did not support the need for carpal tunnel release surgery and that Plaintiff demonstrated good grip strength during a consultative examination (Tr 18).  The ALJ noted that while Plaintiff used a cane, a treating source observed a normal gait (Tr. 18).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed.

126 (1938))(emphasis deleted).   The district court reviews the final decision of the

Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 139

S. Ct. at1152; 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a scintilla

of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*,

486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Secretary of Health & Human Servs.*, 25

F.3d 284, 286 (6th Cir.1994)).

      The standard of review is deferential and "presupposes that there is a 'zone of choice'

within which decision makers can go either way, without interference from the courts."

*Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where substantial evidence

supports the ALJ's decision, the reviewing court "defers to that finding even if there is

substantial evidence in the record that would have supported an opposite conclusion.'"

*Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v.

Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).   However, in determining whether the

evidence is substantial, the court must "take into account whatever in the record fairly

detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495,

497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may

look to any evidence in the record, regardless of whether it has been cited by the ALJ.

*Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).


## V.  ANALYSIS

Plaintiff makes four separate arguments for remand, contending first that the Residual Functional Capacity ("RFC") for light work did not reflect the physical and cognitive limitations resulting from the August, 2014 stroke.   *Plaintiff's Brief,* 12, ECF No. 13, PageID.663.   In particular, he notes that while the ALJ ostensibly accorded significant

-12-

weight to Dr. Gleason's findings, the hypothetical question posed to the VE and by extension, the ultimate RFC does not reflect Dr. Gleason's finding of memory problems.  *Id.* at 664.   Plaintiff argues second that the RFC does not account for the discrete limitations brought about by stroke-induced paralysis, visual limitations or gripping or fine manipulative limitations brought on by Carpal Tunnel Syndrome ("CTS").  *Id.* at 665.   Third, Plaintiff contends that the ALJ improperly declined to accord Dr. Chang's April, 2015 disability opinion controlling weight and that Dr. Sayyid's concurring examining findings of limitation were also improperly rejected.  *Id.* at 666-669.   Finally, Plaintiff argues, in effect, that his need for a cane prevents him from performing exertionally light work. *Id.* at 670.

Plaintiff's first, second, and fourth contentions relate to the ALJ's omission of a number of the alleged limitations from the RFC and can be considered in tandem. Arguments regarding the weight accorded the treating and consultative opinions will be addressed separately.

### A.  The RFC

An RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once her limitations have been taken into account" *Id.* (*quoting* 20 C.F.R. § 416.945). In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. §§ 404.1545(a)(1)(RFC must be based on all "relevant evidence"). In crafting the

RFC, the ALJ must consider the alleged physical, mental, and environmental restrictions. §§ 404.1545(b-d); SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996). However, an ALJ is permitted to draw from multiple medical sources in whole or part in crafting the RFC. *Rudd v. Commissioner of Social Sec.*, 531 F. App'x 719, 728 (6th Cir. September 5, 2013); SSR 96-8p at *2.

As set forth in Section II.D., the ALJ crafted the following RFC in support of the non-disability determination:

> [Plaintiff] can occasionally climb ramps or stairs, and can occasionally balance. He must avoid concentrated exposure to vibration and to hazards. He can perform simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public (Tr. 15).

### 1.  The Physical Restrictions

Contrary to Plaintiff's contention, substantial evidence supports the ALJ's hypothetical question to the VE and the identical RFC for a limited range of exertionally light work. While Plaintiff asserts that left-sided hemiparesis, CTS, and vision problems render him disabled, the rejection of his professed degree of physical limitation is well supported by the treating and consultative records.

The ALJ acknowledged Plaintiff's claim that he experienced ongoing paralysis as a result of the August, 2014 stroke (Tr. 15-16) but cited Dr. Sayyid's February, 2015 observation of "no motor or sensory deficit," and the ability to walk normally (Tr. 16). The ALJ cited  Dr. Chang's April, 2016 clinical observations of "normal gait, station, and

posture" and the absence of muscle weakness (Tr. 17). The ALJ noted that less than 13 months following the stroke, Plaintiff did not exhibit dizziness, weakness, muscle pain, or range of motion restrictions (Tr. 17). While Plaintiff alleged significant visual limitations and loss of peripheral vision, the ALJ cited vision tests showing 20/30 vision (Tr. 18).

To be sure, the records show that Plaintiff experienced some degree of visual impairment immediately following the stroke. However, the records do not support that the visual problems lasted 12-months or longer as required to establish disability. Notably, as of February, 2015, Plaintiff reported only "mild" right visual field problems with 20/30 vision (Tr. 475). Contrary to Plaintiff's report that he experienced "spots" in his vision, an April, 2015 eye exam revealed normal results (Tr. 525, 528). The record does not support Plaintiff's claim of long-term, stroke-induced vision loss.

The ALJ relied on the same body of evidence to decline to find that Plaintiff did not experience significant griping and fine manipulative limitations despite a diagnosis of mild CTS (Tr. 17). The ALJ noted that trigger point injections were performed in February, 2015 but that the medical transcript did not show a recommendation for carpal tunnel release surgery (Tr. 18). He noted Plaintiff demonstrated good grip strength (Tr. 17-18).

The ALJ also properly considered but rejected Plaintiff's claim that he was required to use a cane (Tr. 18). The ALJ noted that the use of a cane was not prescribed by a treating source and Plaintiff did not exhibit motor or sensory deficits or coordination problems requiring the use of a cane (Tr. 18). The ALJ's finding on this point is consistent with my

own review of the transcript showing that in April, 2015, Plaintiff exhibited a normal gait and posture (Tr. 526); June, 2015 records showing that Plaintiff was walking for 10 minutes at a time (Tr. 493); and observations of a normal gait and muscle tone (Tr. 396).   Because the ALJ's RFC for light work is well supported and explained, a remand on this basis is not warranted.[2]

## 2. The Mental Impairments

The ALJ's conclusion that the cognitive impairments did not preclude unskilled work likewise does not provide grounds for remand.  The ALJ acknowledged that the severe impairments of an "unspecified neurocognitive disorder and unspecified anxiety disorder" created some degree of work-related limitation (Tr. 13).  However, Plaintiff's argument that the ALJ skirted the consultative finding of memory deficits by Dr. Gleason is directly contradicted by the ALJ's acknowledgment of Dr. Gleason's finding of "memory deficits" (Tr. 17).

More generally, the ALJ also provided a fulsome discussion of the memory limitations at Step II of his analysis and in discussing the limitations reflected in the RFC (Tr. 14, 16). The RFC for  unskilled, simple, and routine tasks with "few changes in the workplace" and only occasional interaction with the general public adequately accounts for Plaintiff's

---

[2]

Even assuming that Plaintiff's alleged need for a cane for all standing and walking is credited, the contention that the need for a cane renders him disabled is weak, given the VE's testimony that the need to use a cane for walking and standing would not preclude a significant range of sedentary work (Tr. 63).

moderate limitation in "understanding, remembering, or applying information" and concentrational limitations (Tr. 15). *See Smith-Johnson v. Commissioner of Social Sec.*, 579 Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir. September 8, 2014)(moderate concentrational limitations adequately addressed by restricting the claimant to unskilled, routine, repetitive work).

The medical transcript does not  support a more restrictive RFC.  In June, 2015, Plaintiff exhibited a normal affect and mood  (Tr. 493).  Dr. Chang's records from February, 2016 note the absence of mental or cognitive symptoms (Tr. 515).  July and August, 2016 records note that Plaintiff was asymptomatic (Tr. 508, 510).  In January, Dr. Chang noted that Plaintiff's psychological condition was stable (Tr. 568).  Aside from Dr. Gleason's consultative report reflecting some degree of memory deficit, the treating records do not contain support for the finding that memory problems prevented Plaintiff from performing work  within the RFC.  As such, the ALJ did not err in declining to adopt Plaintiff's allegations extreme limitation.  *See Stanley v. Secretary of Health and Human Servcs., 39 F.3d 115, 118-119* (6th Cir. 1994)(ALJ not obliged to credit unsupported allegations of limitation in taking vocational testimony or by extension, in the ultimate RFC).

**B.  The ALJ's Discussion of the Treating and Consultative Records**

As a threshold matter, Plaintiff's argument that Dr. Chang's April, 2015 assessment (Tr. 485-489) is entitled to the deference of a "treating source" opinion is without merit.  At the time of the assessment, Dr. Chang had examined Plaintiff on only a single occasion.  "[A]

plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship. *Kornecky v Commissioner of Social Sec.*, 167 Fed Appx 496, 506 (6th Cir. February 9, 2006)(*citing White v. Barnhart*, 415 F.3d 654, 658 (7th Cir.2005)). "Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-507.   Further, Dr. Chang's assessment that Plaintiff was incapable of sitting for more than two hours a day or standing for more than three stands at odds with his observations from just one day earlier of a normal gait and posture (Tr. 526).

As to Dr. Sayyid's consultative findings, Plaintiff is correct that the ALJ must consider the consultative and non-examining as well as the treating medical opinions.  20 C.F.R. § 404.1527(c)(Commissioner "will evaluate every medical opinion" received).[3] However, Plaintiff's contention that Dr. Sayyid's consultative findings support Dr. Chang's assessment is contradicted by the record.   While Dr Sayyid appears to have accepted Plaintiff's claim that he needed a cane "for balance" (Tr. 470), the physical examination was wholly normal with the exception of problems squatting and getting on and off the examining

---

[3]

Under  newer rules promulgated on March 17, 2017, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. The "new rules, however, apply only to claims filed on or after March 17, 2017." *Hancock v. Commissioner of Social Sec.*, 2017 WL 2838237, at *8 (W.D. Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017)). Because current Plaintiff filed his claim well before March 17, 2017, the general rule that  treating source opinions are entitled to deference applies.

table (Tr. 467).   The ALJ permissibly rejected Dr. Sayyid's finding that Plaintiff required the use of a cane based on Dr. Gleason's observation from the same month that Plaintiff did not use of a cane over the course of their interaction (Tr. 17 *citing* 478).   Because Dr. Sayyid's finding that Plaintiff required the use of a cane is contradicted by substantial evidence, the ALJ did not err in declining to finding the need for a cane.  My own review of the record contains multiple observations of normal physical abilities (Tr. 493, 513).

In closing, I note that the record shows that Plaintiff experienced significant limitation, albeit temporary, as a result of the August, 2014 stroke, and my recommendation to uphold the ALJ's determination should not be read to trivialize the seriousness of that event.  However, the determination that Plaintiff was again capable of a significant range of work within 12 months of the stroke is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## VI.  CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #13] be DENIED and that Defendant's Motion for Summary Judgment [Dock. #19] be GRANTED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Any objections must be labeled as "Objection #1," "Objection #2," *etc.*, and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: June 30, 2020

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 30, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager